IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO.: |
| v. | 1:19-CR-00145-WMR |
| ERIC WASHINGTON, | |
| Defendant. | |

## ORDER

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R & R") [Doc. 40], which recommends that Defendant's motions to suppress evidence [Docs. 19 and 38] be DENIED and Defendant's motions to suppress statements and evidence [Docs. 18 and 20] be DENIED as moot. Defendant filed objections in response to the R & R [Doc. 45]. Upon due consideration of the R & R and Defendant's objections, the Court finds and rules as follows.

**I.      LEGAL STANDARD**

Under 28 U.S.C. § 636(b)(1), the Court reviews the R & R for clear error if no objections are filed by either party within 14 days after service. 28 U.S.C. § 636(b)(1). If a party does file objections, the Court must determine *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. *Id*;

1

Fed. R. Civ. P. 72(b)(3). Since Defendant filed timely objections to the R & R in this case, the Court reviews the challenged portions of the R & R *de novo* and the remainder of the R & R for clear error.

## II.   FACTUAL BACKGROUND

The factual background of this case is set forth in detail in the R & R, and those facts are fully incorporated herein by reference. [Doc. 40 at 3-9]. To summarize, on December 19, 2018, Cobb County Officer Brian Scurr, who is a courtesy officer at the Vinings Ridge Apartment complex, was informed by the complex manager, Tish, of a complaint about the odor of marijuana emanating from an apartment. [Doc. 36 at 6-7, 8, 18-21]. Tish also informed Officer Scurr that there appeared to be false information provided on the lease agreement for that apartment. [*Id.* at 21]. Tish, however, did not ask Officer Scurr to investigate the problem with the lease. [*Id.* at 22]. Because of the issue with the lease, in addition to the potential drug activity, Officer Scurr requested another officer, Cody Thompson, accompany him to perform a "knock and talk." [*Id.* at 23].

At the time of the "knock and talk," both officers were dressed in police uniforms and wore their badges. [*Id.* at 8-9, 23]. They were also armed, but their firearms remained holstered during the entire interaction the occupants of the apartment. [*Id.* at 18, 23]. Officer Scurr wore a body camera. [*Id.* at 9].

When the officers approached the apartment, Officer Scurr smelled the odor of burnt marijuana. [*Id*. at 11]. Officer Scurr then knocked and announced, "Police." [*Id*. at 11-12]. When Tiffany Turner, an occupant of the apartment, opened the door, Officer Scurr testified that the smell of marijuana grew stronger, indicating the smell was coming from inside the apartment. [*Id*. at 11]. The officers advised Ms. Turner that they were there due to a complaint about the odor of marijuana and asked her if they could step inside the apartment and speak to her. [*Id*. at 12, 27-28]. They did not demand to be let inside of the residence. [*Id*. at 12]. Ms. Turner was cooperative and invited the officers inside. [*Id*. at 12-13, 27-28].

In response to Officer Scurr's statement about the odor of marijuana, Ms. Turner admitted to smoking marijuana in the bathroom of the apartment. [*Id*. at 13, 29]. She explained that she smoked in the bathroom to avoid smoking in front of her children, including her fifteen-year-old son who was home sick. [*Id*. at 13]. She also stated that her fifteen-year-old son was supposed to have appeared in juvenile court that day. [*Id*.]. Officer Scurr asked Ms. Turner if Defendant was at work. [*Id*.]. She responded that Defendant was in weekend jail for a drug charge. [*Id*. at 13, 15]. Officer Scurr also asked Ms. Turner if she would consent to a search of the apartment. [*Id*. at 13-15]. After the officers ensured her that the apartment would not be tossed, Ms. Turner agreed to the search and led the officers to the bathroom,

where they observed a partially burned marijuana cigarette and the innards of a "blunt" or "cigar." [*Id*. at 13, 31].

At that point, the fifteen-year-old son emerged from his bedroom and asked what was going on. [*Id*. at 13-14, 31-32]. When the situation was explained to him, he refused to let the officers search his bedroom. [*Id*. at 14, 32]. Ms. Turner also became uncertain about her consent to the search. [*Id*.]. Because Ms. Turner seemed uncertain, Officer Scurr decided to stop the search and apply for a search warrant. [*Id*. at 14, 32-33]. He then explained his decision to Ms. Turner. [*Id*.].

After Officer Scurr obtained the search warrant, he returned to search the remainder of the apartment. [*Id*. at 15-16, 34]. During that search, he discovered quantities of marijuana packaged for distribution, two firearms, and digital scales, along with paperwork bearing Defendant's name. [*Id*. at 16-18]. Defendant now seeks to suppress this evidence, claiming Officer Scurr's purpose for the "knock and talk" was improper.

### III. DISCUSSION

Defendant objects to the Magistrate Judge's R & R, arguing that Officer Scurr breached the lawful purpose of a "knock and talk" because "he hoped to gain entrance into the apartment." [Doc. 45 at 2-3]. In other words, Defendant contends that the "knock and talk" was improper because the officers approached Defendant's

4

residence with the purpose of gaining entry in order to conduct a search. For the reasons discussed below, the Court rejects Defendant's argument and adopts the findings and conclusions of the Magistrate Judge.

When determining whether an officer had a legitimate purpose for conducting a knock and talk, courts consider objectively observed factors, not an officer's subjective intent. As explained in *Kentucky v. King*, the Supreme Court has "'repeatedly rejected' a subjective approach . . . [and has] never held, outside limited contexts such as an 'inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment.'" 563 U.S. 452, 464 (2011) (citations omitted).

A legitimate knock and talk, however, does not occur where officers "do nothing but conduct a search." *Florida v. Jardines*, 569 U.S. 1, 9 n.4 (2013); *Young v. Borders*, 850 F.3d 1274, 1285-86 (11th Cir. 2017). In contrast, a legitimate knock and talk takes place when the officers' objective conduct demonstrates that they took lawful steps before conducting a search. *Borders*, 850 F.3d at 1285-86. For example, in *Borders*, the court explained that the officers "did not snoop around the home, peer into the windows, or take any steps to collect evidence." *Id*. at 1285. Instead, the officers merely "knocked to seek information about and locate the owner, albeit possibly armed, of the still-hot motorcycle parked out front by talking

5

to the residents of Apartment 114." *Id.* Therefore, the court held that the knock and talk was legitimate. *Id.* at 1286.

Moreover, a knock and talk is not invalid merely because the officers ask for and obtain consent during the course of their conversations with the occupants of the residence. *United States v. Bearden*, No. 4:12-CR-28-02-HLM, 2013 WL 1969906, at *4 (N.D. Ga. May 13, 2013). In fact, "it makes no difference that an officer may have approached the person with the hope or expectation of obtaining consent." *King*, 563 U.S. at 463.

Here, Officer Scurr and Officer Thompson performed a legitimate knock and talk because their objective conduct demonstrates that they did not carry out the knock and talk solely to conduct a search of Defendant's residence. Officer Scurr was acting on a complaint about the smell of marijuana from a long-time resident of the complex. [Doc. 36 at 8, 18-20]. This complaint was confirmed when he, based on his training and experience, smelled burnt marijuana as he approached the door of the apartment. [*Id.* at 10-12, 25]. When they reached the door, the officers did not snoop around the apartment or look into the apartment's windows. Instead, the officers simply knocked on the door and explained to Ms. Turner that they were there to discuss the complaint about the marijuana odor. [*Id.* at 12, 27]. After Officer Scurr asked Ms. Turner if he could step inside the residence, Ms. Turner invited the

officers into the apartment.  [*Id.* at 12, 27-28].  The officers did not draw their weapons or demand to be let inside.  [*Id.* at 12].  Based on this conduct, Officer Scurr and Officer Thompson's knock and talk, as well as their subsequent entry into Defendant's residence, were legitimate.

Furthermore, the fact that Officer Scurr and Officer Thompson asked for and obtained consent to search the apartment does not render the knock and talk invalid. After Ms. Turner's statements that she had smoked marijuana in the bathroom, that two juveniles resided in the apartment, and that Defendant was currently in weekend jail, Officer Scurr asked for Ms. Turner's consent to perform a search of the apartment, to which she agreed.  [*Id.* 13-15, 30-31].  She thereafter led the officers to a partially burned "blunt" in the bathroom.  [*Id.* at 13, 31].  And, when Ms. Turner seemingly withdrew her consent to the search after her fifteen-year-old son refused to let the officers into his bedroom, the officers promptly stopped their search.  [*Id.* at 14-16, 32-33].  The officers finished their search and recovered evidence only after obtaining a valid search warrant, which Defendant does not appear to challenge. [*Id.* at 16-18].  Therefore, the Court concludes that the knock and talk, entry, and subsequent search were legitimate.  Any evidence found therein is not subject to suppression.

Regarding Defendant's motion to suppress statements made on June 23, 2018 [Doc. 18] and motion to suppress evidence obtained in connection with Defendant's arrests on June 23, 2018 and July 3, 2018 [Doc. 20], the Court agrees with the Magistrate Judge's conclusion that those motions are now moot.  In Defendant's post-hearing brief, filed subsequent to the Magistrate Judge's evidentiary hearing, Defendant states that he withdraws his motion to suppress evidence seized during the searches on June 23, 2018 and July 3, 2018.  [*See* Doc. 38 at 7-8].  Additionally, the Government states that it will not introduce into evidence, except for purposes of impeachment if Defendant testifies at trial, any statements made by Defendant on June 23, 2018, mooting Defendant's motion to suppress those statements.  [*See* Doc. 39 at 2 n.1].[1]  As such, the Court adopts the Magistrate Judge's recommendation and denies those motions [Docs. 18 and 20] as moot.

## III.   CONCLUSION

After due consideration of the R & R [Doc. 40] and Defendant's objections [Doc. 45], the Court receives the R & R with approval and adopts its findings and legal conclusions as the opinion of this Court.  Accordingly, Defendant's motions to suppress evidence [Doc. 19 and Doc. 38] are hereby **DENIED** and Defendant's

---

[1] As the Magistrate Judge identified, the Government incorrectly refers to this motion to suppress statements as docket entry 19.  [*Id.*].

motions to suppress statements and evidence [Doc. 18 and Doc. 20] are hereby **DENIED** as moot.

**IT IS SO ORDERED**, this 15th day of April, 2020.

*/s/ William M. Ray, II*
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE